SPENCER H. BEECHER and Another, Plaintiffs, *v.* THE PEOPLE OF
THE STATE OF NEW YORK and Another, Defendants.

Supreme Court, Warren County Special Term, April 3, 1925.

Wills — construction — testator directed determination of value of both
real and personal property, including parcel in Adirondack wilderness
aggregating 7,000 acres — parcel, though unmentioned in will, formed
portion of residuary estate which testator directed to be divided into
twelve equal parts with specific disposition to legatees — power of sale
operates as equitable conversion, though not imperative in terms, when
necessary to accomplish purpose of will — language of will effected
equitable conversion of real estate passing under residuary clause —
plaintiffs, as legatees, took only personalty and have no capacity to
sue for partition — complaint dismissed.

If an equitable conversion be necessary to accomplish the purpose and intention
of a testator in the disposition of the proceeds of his estate and the general
scheme of the will requires a conversion, a power of sale operates as a conversion
though the words conferring the authority are not words of command or
absolute direction.

Accordingly, a will which by its terms directs that the testator's executors shall
ascertain and determine the amount and value of both real and personal
property, not specifically disposed of by will, including a one-fourth interest
in 7,000 acres of land in the Adirondack wilderness, and further directs the
division of the residuary estate, of which said parcel forms a part, into twelve
equal parts with specific disposition to legatees, should be construed as working
an equitable conversion, where, by the language of the testator and the dis-
position of his estate it is clear that a conversion was intended and was abso-
lutely essential to accomplish the purpose of the will. Moreover, the language
of testator's will indicates a deliberate intention to bring about such conversion,
though the power of sale is not in terms imperative, since there was an absolute
impossibility of the actual division or partition of the parcel among those
entitled to testator's residuary estate.

Plaintiffs, as legatees, took, therefore, only personalty, and the complaint in their
action for the partition of the parcel should be dismissed, since, under the
complete equitable conversion of testator's undivided one-fourth interest in
the 7,000-acre parcel, they had no capacity to sue.

MOTION by defendant, The People of the State of New York, to
dismiss the complaint, which seeks the partition of certain lands
and for a declaratory judgment as to the rights of the parties herein,
and other relief.

*William E. Prentice,* for the plaintiffs.

*Carl Sherman,* Attorney-General [*Irving I. Goldsmith,* Deputy
Attorney-General], for the defendant, The People of the State of
New York.

ANGELL, J.:

Plaintiffs sue as heirs at law of Mark H. Beecher, deceased, a retired rear admiral of the United States Navy, who died May 25, 1882, at Albion, Orleans county, without direct descendants, leaving a will which was admitted to probate in the Surrogate's Court of Orleans county July 31, 1883. Admiral Beecher left a considerable estate, consisting, among other property, of an undivided one-fourth interest in 7,000 acres of land in township 40, Totten & Crossfield's Purchase, Hamilton county, being in the town of Long Lake and bordering on Raquette lake. This land was not specifically mentioned in the will, and was apparently at that time considered of small relative value. It formed a portion of the residuary estate which was disposed of in item 6 of the will, section 1 of which provides as follows:

" At my death my executors shall ascertain, decide, and determine, the amount in value of all of my real estate, money in hand, notes, accounts, bonds, mortgages, and evidences of debt which shall remain not specifically disposed of in this Will, and shall pay therefrom all taxes and legal charges against my property, provide for paying the expenses of executing this Will, and any other just demands which should be paid out of my property. And the remainder of the amount of my property so to be ascertained, my executors shall divide into twelve equal parts, and I give and devise and bequeath said equal parts to the several persons herein named as follows, viz:— "

Then follow sections 2–18 in which specific disposition is made of each of the one-twelfth equal parts. Many of the one-twelfths are divided, in one case the division being into twelve parts, so that each beneficiary obtained one-one hundred and forty-fourth of the residuary.

Five executors were appointed under the will, three of them being nephews of the deceased. The executors were given " power to sell any of my real estate when in the judgment of the majority of my said executors it may be proper and for the best interests of my estate to do so." Authority was given to executors Arad Thomas and Homer D. Waldo to execute all deeds required, the determination regarding all matters of the estate to be made by a majority of the executors. By deed dated August 3, 1883, all the executors, except Waldo, assuming to act under the authority given them by the will, conveyed to Waldo individually the testator's undivided one-fourth interest in the tract in question, and thereupon Waldo instituted a partition action against the owners of the other undivided three-fourths of the tract. This action went to judgment and sale. The referee reported that an

actual partition would be impracticable. The premises were sold at public auction July 9, 1884, and were struck off to the State as the highest bidder. The sale was confirmed July 25, 1884. Testator's one-fourth of the net proceeds of the sale was $2,769.91. This amount was turned over to the plaintiff Waldo, delivered by him to the executors, and is contained in their second intermediate accounting, November 12, 1888. A final decree settling all the accounts of Waldo, the sole surviving executor, was made in August, 1892. All the accountings seem to have been carefully made, and due notice thereof was given to all the legatees and parties interested.

The chief grievance set forth in the long and somewhat involved complaint is that the Walso partition action was illegal and of no effect, and that, therefore, plaintiffs and the other heirs of the deceased are still vested with title to an undivided one-fourth of the lands in question, which since the time of the partition have increased enormously in value. This contention makes necessary a construction of the will of Admiral Beecher. If there were an equitable conversion into personalty of the real estate owned by the testator which passed under the residuary clause of the will, then this action cannot be maintained; for in that event plaintiffs and their predecessors took only personal property, as legatees, under the will of deceased, have no interest in this real estate, and so have no legal capacity to sue. (*Chamberlin* v. *Chamberlin*, 220 N. Y. 619.) And this is true whether the equitable conversion was mandatory by the terms of the will, or whether it is a necessary implication therefrom, in order that its provisions might be carried out.

The following language used in *Lent* v. *Howard* (89 N. Y. 169) is applicable to the situation here: " It is true that the power of sale is not in terms imperative. The words are those conferring authority, and not words of command or absolute direction. But it is clear that a conversion was necessary to accomplish the purpose and intention of the testator in the disposition of the proceeds, and when the general scheme of the will requires a conversion, the power of sale operates as a conversion, although not in terms imperative. (*Dodge* v. *Pond*, 23 N. Y. 69.) The conversion also will be deemed to be immediate, although the donee of the power is vested, for the benefit of the estate, with a discretion as to the time of sale."

The same principle is held in *Delafield* v. *Barlow* (107 N. Y. 535); *Salisbury* v. *Slade* (160 id. 278); *Power* v. *Cassidy* (79 id. 602) and numerous other cases.

Here there is not, in terms, an imperative conversion. But

considering the language of the will and the disposition of testator's property made therein, it seems clear that an equitable conversion was intended by the testator, and was absolutely necessary to carry the will into effect. His residuary estate, as shown by section 1 of item 6, consisted of real estate and numerous items of personal property. Whether any real estate other than the undivided one-fourth of this 7,000-acre tract fell into the residuary does not appear. But the necessity of an equitable conversion is clearly apparent from the situation regarding the 7,000-acre tract. If an actual partition were to be made among the residuary legatees, there would have had to be, necessarily, first an action partitioning off testator's undivided one-fourth. Then this one-fourth would have had to be divided into many parcels of various sizes, but of the same value, the parcels ranging according to size and value from one-twelfth of testator's undivided one-fourth to one-one hundred and forty-fourth thereof. The land was in the Adirondack wilderness. It was wild, forest land, and, as appears from the papers forming part of the complaint, some heavily timbered, some burnt over, some fronting on lakes and some of it inaccessible.

The testator unquestionably recognized the absolute impossibility of an actual division or partition of this land among those entitled to his residuary estate. This is shown beyond peradventure by the language that he used in numerous places throughout the will. This will, it should be noted, was not drawn by a careless or amateurish scrivener, indifferent or ignorant about the precise meaning of the words he used. On the contrary, it was drawn with almost meticulous care, by a skilled draftsman. Words are used precisely. If we are not to give them their correct legal meaning, then there is little encouragement to exactitude and precision in drawing wills, that very important part of an attorney's work. There can be no doubt but that the language of this will was deliberately and accurately used by the draftsman in carrying out the wishes of the testator as expressed to him. Specific reference may be had to a few passages, the italics in the quoted portions being mine.

In section 1 of item 6, heretofore quoted in full, testator directs his executors to determine " *the amount in value* of all my real estate, money in hand, notes," etc., and then to " *divide* " it into twelve equal parts. " The amount in value " of testator's real estate, so that it should be placed with items of personal property therein enumerated, and evenly divided, could only be ascertained by a sale thereof.

In section 3 of item 6 he gives to a nephew one-twelfth " to

be taken by and *retained in the hands* of Homer D. Waldo, one of my executors hereinafter named, in trust, during the life of said Carlos V. J. Beecher and I charge *said gift* to Carlos with $900 which sum is to be deducted from the one-twelfth part of my property given to him." This language necessarily implies a conversion. He charges his " gift " with a sum which is to be " deducted " from the beneficiary's one-twelfth. That is such language as is used properly only in connection with personal property.

In section 6 of item 6 testator gives a one-twelfth to Margaret Herrick, the wife of a nephew, in trust for her support and maintenance, and provides that at her death " the residue *of the fund so given* to said Margaret in trust, I give to the lineal descendants " of her husband. Again he provides in the same connection that " *in payment of said bequest* to Margaret," his executors shall apply thereon certain obligations which he holds against her. These references to the one-fourth share of Margaret as a " fund," and as a " bequest," are wholly antagonistic to any theory but one of equitable conversion of real estate into personal property.

In section 7 of item 6 testator gives one-twelfth part to the children of a nephew, and provides " in payment *of said bequest* to said children " his executors shall apply notes and mortgages which he holds at his death against their mother.

In section 15 of item 6, after having provided in the previous section that one-twelfth of the residuary shall go to certain nephews, the testator specifies that " in payment *of the legacies above given* " to these nephews, his executors shall deduct evidences of debt which he has against their mother.

Section 1 of item 7 states: " In item sixth I have directed that certain demands, obligations, bonds, and mortgages, and notes, therein described, shall be applied in the payment of *bequests* made to certain *legatees* therein named." In item 2, section 3, after having provided that a nephew shall have the use, profits, etc., of a certain farm, testator specified that if the nephew shall leave no descendants, the farm shall revert to his estate " and shall be divided among the surviving *legatees* named and designated in item sixth."

Some of the gifts in the various sections of item 6 (which disposes of the residuary estate) are outright, others in trust. Some are charged with the payment of certain indebtedness. None of the gifts is referred to as real property. But they are constantly referred to in terms applicable only to personalty.

It would be superfluous to cite further illustrations from the

47

will itself to show the intent of the testator. Those already made indicate conclusively that the testator intended that the real property in his residuary estate should be reduced to personalty by his executors, and the proceeds divided as there specified. There was, then, a complete equitable conversion of testator's undivided one-fourth of this 7,000-acre tract, effective as of the date of his death.

In view of this determination, and its necessary corollary that plaintiffs have no legal capacity to sue, it would be futile to discuss the legality of the Waldo partition action, and various other questions raised by plaintiffs. As this determination goes directly to the merits, it is impossible, if the conclusion reached is correct, that plaintiffs can amend their complaint so that it shall state a cause of action. The motion for judgment dismissing the complaint is, therefore, granted.

Ordered accordingly.